UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-631-RGJ

JARRUS RANSOM                                                                                               Plaintiff

v.

LOUISVILLE-JEFFERSON COUNTY                                                                Defendants
METROPOLITAN GOVERNMENT,
et al.

\* \* \* \* \*
**MEMORANDUM OPINION AND ORDER**

Plaintiff Jarrus Ransom alleges violations of state law and seeks relief under 42 U.S.C. § 1983 and § 1985 for alleged violations of his rights under the Fourth and Fourteenth Amendments to the United States Constitution against Defendants Louisville-Jefferson County Metropolitan Government ("Louisville Metro"), Officer Corey Evans, Officer Kyle Carroll, Officer Sarah Nicolas, and Unknown Defendant Officers (collectively, "Defendant Officers"). [DE 1-3 at 10-11]. Defendants moved to dismiss the Complaint.[1] [DE 4]. Briefing is complete and the matter is ripe. [DE 5; DE 6]. For the reasons below, Defendants' Motion to Dismiss [DE 4] is **GRANTED IN PART AND DENIED IN PART**.

### I.     BACKGROUND

On December 9, 2018, Defendant Officers stopped Plaintiff because the "'window tint'" on his windshield "'went past the ASL line.'" [DE 1-3 at 12]. After they stopped him, they "physically pulled" him from his car and "slammed" him to the ground. *Id.*  One of the officers

---

[1] Defendants move to dismiss the Complaint pursuant to Ky. R. Civ. P. 12.02(f). [DE 4 at 20]. Because the case is now in federal court where the "Federal Rules govern procedural issues," the Court interprets Defendants' motion under Fed. R. Civ. P. 12(b)(6). *Gallivan v. United States*, 943 F.3d 291, 294 (6th Cir. 2019)

"repeatedly punched [Plaintiff] and put handcuffs on him." *Id.* Additional officers arrived on scene and "watched as [Plaintiff] was kicked." *Id.* Plaintiff "sustained injuries due to Defendants' excessive force against him." *Id.*

Plaintiff's counsel tried to investigate the incident, but "was met with frequent attempts by Defendants to conceal the truth." *Id.* at 12. Defendants "repeatedly stalled" and "refused to turn over" the records Plaintiff's counsel requested through Kentucky's Open Records Act. *Id.* at 13.

On August 14, 2019, Defendants "finally produced nine pieces of paper" related to the incident, but persisted in refusing to "produce the dash cam or the body cam footage." *Id.* Two days later, Plaintiff sued Defendants in Jefferson County Circuit Court. [DE 1-3]. Defendants removed the case [DE 1] to this Court and moved to dismiss [DE 4].

## II.   STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers*, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

### III. DISCUSSION

Defendants argue that Defendant Louisville Metro is entitled to sovereign immunity for Plaintiff's state-law tort claims, as well as for his § 1983 and state-law punitive damages claims. [DE 4-1 at 21]. Defendants also argue that Plaintiff has failed to sufficiently plead his Fourteenth Amendment claim against Defendants, his failure-to-train claim against Defendant Louisville Metro, his § 1983 claim against Defendant Officers, and his § 1985 claim against Defendants. *Id.* at 23-27.

**A. Sovereign Immunity**

    1. Louisville Metro

        *a. State-law tort claims*

Plaintiff asserts state-law tort claims of excessive execution, assault, battery, and false imprisonment. [DE 1-3 at 15]. Defendant Louisville Metro contends that it is "entitled to sovereign immunity" for these claims. [DE 4-1 at 22]. Plaintiff argues that "the General Assembly has waived sovereign immunity in tort actions." [DE 5 at 35].

Under Kentucky law, political subdivisions of the Commonwealth, including county governments, are entitled to sovereign immunity. *Yanero v. Davis*, 65 S.W.3d 510, 525 (Ky. 2001). The General Assembly addressed the immunity of such governments in KRS 67C.101(2)(e), providing that consolidated local governments, like Louisville Metro, "shall be accorded the same sovereign immunity granted counties, their agencies, officers, and employees." KRS 67C.101(2)(e); *see also Jewish Hosp. Healthcare Servs., Inc. v. Louisville/Jefferson Cty. Metro Gov't*, 270 S.W.3d 905, 907 (Ky. App. 2008) ("[Louisville] Metro Government is entitled to sovereign immunity"); *Lexington-Fayette Urban Cty. Gov't v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004) (finding that Lexington-Fayette Urban County Government was immune from suit). Thus, absent an explicit statutory waiver, Louisville Metro is entitled to immunity. *Jewish Hosp. Healthcare Servs., Inc.*, 270 S.W.3d at 907.

The doctrine of sovereign immunity extends to tort claims. *Univ. of Louisville v. Martin*, 574 S.W.2d 676, 677 (Ky. Ct. App. 1978) (citing *Foley Const. Co. v. Ward*, 375 S.W.2d 392 (Ky. 1963); *All-Am. Movers, Inc. v. Kentucky ex rel. Hancock*, 552 S.W.2d 679 (Ky. Ct. App. 1977)). The Kentucky General Assembly has never expressly stated or otherwise suggested that it intended to waive sovereign immunity for tort claims against the government. Faced with such claims, courts have found that no waiver exists. *See Schwindel v. Meade Cty.*, 113 S.W.3d 159, 163 (Ky. 2003) (rejecting the argument that CALGA "constitutes a waiver by the General Assembly of a county's immunity from vicarious liability for damages arising from the tortious performance of ministerial acts by its employees"); *Yanero*, 65 S.W.3d at 526 (noting that governmental subdivisions' immunity is grounded in the Kentucky Constitution and thus not waived); *Tinch v. Jefferson Cty. Pub. Sch. Sys.*, No. 3:12-CV-844-DJH, 2016 WL 1574149, at *4 (W.D. Ky. Apr. 19, 2016) (dismissing a defamation claim under Kentucky law because sovereign immunity had

not been waived). Thus, Louisville Metro is entitled to sovereign immunity for Plaintiff's state-law claims. *See Albin v. Louisville Metro Gov't*, No. 3:19-CV-576-DJH, 2020 WL 1310495, at *3 (W.D. Ky. Mar. 19, 2020) (finding Louisville Metro entitled to sovereign immunity and dismissing state-law claims, including tort claims).

### b. Punitive damages under §1983 and Kentucky law

Defendants argue that "[m]unicipalities are immune from punitive damages in §1983 claims. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 248 (1981). As such, Plaintiffs are not entitled to an award of punitive damages against Metro Government with respect to the §1983 claims even if Metro Government is found to be a party to this action. Metro Government is similarly protected from punitive damages with respect to state law claims." [DE 4-1 at 27]. Plaintiff appears to concede that Louisville Metro is immune from punitive damages in the §1983 claim, but contends that Louisville Metro is not immune from punitive damages in the state-law claims: "Defendants wrongly argue that they are immune from state law claims for punitive damages. That clearly is incorrect . . . [P]unitive damages are indeed available against a municipality under Kentucky law." [DE 5 at 45].

As to a municipality's immunity from punitive damages in a § 1983 claim, the answer is clear: "[A] municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Based on this binding precedent, the Court dismisses Plaintiff's claim against Louisville Metro for punitive damages under § 1983.

But as to punitive damages under Kentucky law the answer is less clear because neither Kentucky courts nor the Sixth Circuit have conclusively resolved this issue. That said, many courts in this circuit have considered this issue and found that a municipality, like Louisville Metro, is immune from punitive damages in state-law claims. See *D.H. v. Matti*, No. 3:14-CV-732-CRS,

5

2015 WL 4530419, at *10 (W.D. Ky. July 27, 2015) ("In light of the statute, *Burns, City of Newport,* and *Phelps,* this Court finds that the Kentucky Supreme Court would not allow for punitive damages against a municipality . . . Accordingly, the Court concludes that the plaintiff may not recover punitive damages the City of Brandenburg"); *See Johnson v. Kentucky-Cty. of Butler*, No. 1:12CV-37-JHM, 2014 WL 4129497, at *12 (W.D. Ky. Aug. 18, 2014) (dismissing plaintiff's state-law punitive damages claims against Butler County); *Marksbury v. Elder*, No. 5:09-CV-24-REW, 2011 WL 5598419, at *9 (E.D. Ky. Nov. 17, 2011) ("[N]either § 1983 nor Kentucky law permits an award of punitive damages against a municipality"); *Dempsey v. City of Lawrenceburg*, No. CIV.A. 3:09-33-DCR, 2010 WL 3825473, at *8 (E.D. Ky. Sept. 23, 2010) ("Plaintiffs claim for punitive damages against the City of Lawrenceburg fails as a matter of law"). Based on the weight of this persuasive precedent, the Court dismisses Plaintiff's state-law punitive damages claims against Louisville Metro.

  2. <u>Defendant Officers in their official capacity</u>

  Plaintiff sued Defendant Officers in both their individual and official capacities. [DE 1-3 at 10-11]. Plaintiff argues that "Defendant Officers are entitled to sovereign immunity for all state claims raised against them in their official capacities." [DE 4-1 at 23]. Plaintiff does not respond to this argument.

  When sued in their official capacity, officials are "cloaked with the same immunity as the government or agency he/she represents." *Schwindel v. Meade Cty.*, 113 S.W.3d 159, 169 (Ky. 2003) (citing *Yanero*, 65 S.W.3d at 522). Defendant Officers are protected in their official capacity by absolute immunity from Plaintiff's state-law claims. As a result, the Court dismisses Plaintiff's state-law claims against Defendant Officers in their official capacity.

**B.     Failure to State a Claim**

    1.     <u>Against Defendants: Fourteenth Amendment claim</u>

Plaintiff alleges that Defendants' conduct "amounts to an unreasonable seizure and/or seizure without probable cause within the meaning of the Fourth and Fourteenth Amendment of the United States Constitution and the Civil Rights Act, Title 42 of the United States Code §1983." [DE 1-3 at 14]. Defendants contend that Plaintiff's unreasonable seizure claim under the Fourteenth Amendment must be dismissed because "[a]s a matter of law, unlawful search and seizure challenges as well as claims of excessive force are properly analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989)." [DE 4-1 at 23]. Plaintiff argues, without citing any countervailing authority, that "[u]nder the color of state law, Defendants physically abused Mr. Ransom – they robbed him of his rights, his liberty and the equal protection of the laws. This cause of action should not be summarily dismissed. Defendants argue that Plaintiff's claims are really claims brought under the 4th Amendment. It is through the 14th Amendment that these claims are brought against the County." [DE 5 at 37].

In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held that the Fourth Amendment provides the exclusive remedy for claims for excessive force during a seizure: "we hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* at 395 (emphasis in original).

Plaintiff alleges that he was seized when pulled over for a traffic violation. Because the use of force at issue occurred during a stop, the Court analyzes Plaintiff's claims under the Fourth Amendment, rather than the Fourteenth Amendment. Thus, as it relates to his allegations that he

7

was unlawfully searched and seized, the Court will dismiss the Fourteenth Amendment claim, but will allow Plaintiff to proceed on his Fourth Amendment claim. *See Owens v. Trulock*, No. 118CV00167GNSHBB, 2020 WL 376658, at *5 (W.D. Ky. Jan. 23, 2020) ("[T]o the extent Plaintiffs allege unreasonable search and seizure for lack of probable cause or reasonable suspicion claims premised on the Fourteenth Amendment's Due Process Clause, those claims are dismissed"); *Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 940 (M.D. Tenn. 2012) (dismissing Fourteenth Amendment claim, but allowing plaintiff to proceed on Fourth Amendment claim); *Huston v. Felder*, No. 5:07-183-JMH, 2008 WL 4186893, at *4 (E.D. Ky. Sept. 10, 2008) (dismissing § 1983 claim alleging violation of Fourteenth Amendment's Due Process Clause based on an unreasonable search and seizure for lack of probable cause because Fourth Amendment governs claim instead).

    2.    <u>Against Defendant Louisville Metro: Failure-to-train claim</u>

A plaintiff asserting a municipal liability claim under § 1983 must allege that the federal violation occurred because of a municipal policy or custom. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). To properly assert a municipal liability claim, a plaintiff must sufficiently allege: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision[-]making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell,* 436 U.S. at 694. "In the context of Section 1983 municipal liability, district courts in the Sixth Circuit have interpreted the *Iqbal/Twombly* pleading standards strictly." *Spainhoward v. White Cty., Tennessee*, 421 F. Supp. 3d 524, 544 (M.D. Tenn. 2019).

Based on his Complaint, Plaintiff's theory of § 1983 municipal liability is that Louisville Metro failed to adequately train the officers who assaulted him. [DE 1-3 at 14-15]. To state a failure-to-train claim, the plaintiff must allege: 1) "the training or supervision was inadequate for the tasks performed"; 2) "the inadequacy was the result of the municipality's deliberate indifference"; and 3) "the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). As to the municipality's "deliberate indifference," the plaintiff must either allege: 1) "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury"; or 2) "[A] single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Fisher v. Harden,* 398 F.3d 837, 849 (6th Cir.2005); *Bd. of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 409 (1997).

Plaintiff argues that he has sufficiently alleged his failure-to-train claim: "Plaintiff offers that Defendant Louisville-Jefferson County Metro Government ordered that eight units go to the scene. This action shows excessive force and indicates the acceptance/condonation of a pattern and practice of misconduct and that Defendant Louisville-Jefferson County Metro Government had direct and actual, or at minimum constructive, knowledge of the constitutional violations that were occurring under its policy of permitting excessive force." [DE 5 at 42].

Defendants, on the other hand, contend that Plaintiff has failed to do so: "Because Plaintiff has not alleged prior unconstitutional conduct, it is presumed that he is raising the failure to train claim based on a single incident theory. This case does not fit in the narrow range of instances representing a failure to equip law enforcement officers with specific tools to prevent the violation

9

of federal rights. Plaintiff has pled no facts supportive of the conclusory allegation that LMPD Officers were not adequately trained or supervised." [DE 4-1 at 26].

In support of his failure-to-train claim, Plaintiff alleges:

> 8. On December 9, 2018, Defendants pulled Mr. Ransom over in a parking lot of Kroger . . . Officers slammed Mr. Ransom to the ground. One of the LMPD officers repeatedly punched Mr. Ransom and put handcuffs on him. By this time, several LMPD officers had arrived and officers watched as Mr. Ransom was kicked. Call reports indicate that LMPD dispatched eight (8) units to the scene.
>
> . . .
>
> 13. On or about August 14, 2019, Defendants finally produced nine pieces of paper. Defendants refused to produce dash cam or body camera footage.
>
> 14. Additionally, Defendants' dashboard camera video should show . . . a multitude of LMPD officers involved in the abuse and detainment of Mr. Ransom.  In addition, no use of force form has ever been produced.
>
> . . .
>
> 24. Pursuant to the United States Constitution and 42. U.S.C. § 1983, the Defendant LMPD has failed to adequately train and supervise its law enforcement officers as to the proper procedure for stopping and detaining citizens of the Commonwealth of Kentucky.
>
> 25. The constitutionally offensive and negligent training and supervision by LMPD of its officers is inadequate to the task that the officers must perform, and the Defendants' deliberate indifference and inadequacy in the present scenario was 'closely related to' and/or 'actually caused' the Plaintiff's injuries.
>
> 26. Defendant LMPD is responsible for the actions of the Unknown Defendant officers because the aforementioned constitutionally offense and negligent supervision and training of its officers amounts to an execution and/or implementation of a policy statement, ordinance, regulation, or decision officially adopted and promulgated by LMPD.

[DE 1-3 at 12-15].

Plaintiff has failed to sufficiently state a failure-to-train claim against Louisville Metro[2] because his Complaint consists of legal conclusions "devoid of . . . factual enhancement." *Iqbal*, 556 U.S. at 678. Paragraphs 24-26 in the Complaint simply recite the elements of a failure-to-train claim. *See Hall v. City of Williamsburg, Ky.*, Civil Action No. 6:16-304-DCR, 2017 WL 3668113, *13 (E.D. Ky. Aug. 24, 2017) ("[T]he majority of [plaintiff's] allegations relating to the [City's] liability are vague recitations of the elements for a claim that are unsupported by any factual allegations"). Plaintiff has not asserted, even in a conclusory fashion, that LMPD officers had a pattern of committing similar unconstitutional violations. *See Okolo*, 892 F. Supp. 2d at 944 (dismissing failure-to-train claim where plaintiff "[pled] no facts and cite[d] no prior instances of unconstitutional conduct to support his conclusory allegation that Metro was aware of a history of illegal arrests, much less that they ignored them"); *Spainhoward v. White Cty., Tennessee*, 421 F. Supp. 3d 524, 544 (M.D. Tenn. 2019) (dismissing failure-to-train claim where plaintiff did "not set forth *any* facts that there were prior instances of similar misconduct to show that White County was on notice that its training and supervision with respect to vehicular pursuits or the use of force was deficient") (emphasis in original).

Plaintiff has likewise failed to sufficiently allege a claim based on a single violation. Nowhere in his Complaint does Plaintiff allege "a complete failure to train the [staff members],

---

[2] Plaintiff contends that, even if he has failed to plead a failure-to-train claim, he has pled one for ratification. [DE 5 at 40]. In support of his ratification theory of municipal liability, Plaintiff argues that he has alleged that "[m]any officers watched as Mr. Ransom was handcuffed and beat by fellow officers. One officer even kicked him – while the officers just watched." *Id.* But in his Complaint Plaintiff neither once uses the word "ratification" nor alleges that "officials with decision-making authority" ratified the Defendant Officers' unconstitutional conduct. And even if he had, it is not plausible that these patrol officers "possess[] final authority to establish municipal policy with respect to the action ordered, which means that [their] decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Flagg v. City of Detroit*, 715 F.3d 165, 175 (6th Cir.2013). Plaintiff's arguments about ratification cannot remedy on the backend what Plaintiff failed to sufficiently allege on the frontend.

training that is so reckless or grossly negligent that future . . . misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Harvey v. Campbell Cty., Tenn.*, 453 F. App'x 557, 567 (6th Cir. 2011) (quoting *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir.1982) (internal quotation marks omitted); *See Birgs v. City of Memphis*, 686 F. Supp. 2d 776, 780 (W.D. Tenn. 2010) (dismissing municipal liability claims because "[s]tripped of legal language, [p]laintiff's [c]omplaint contains no fact that could plausibly lead one to believe that the City deliberately ignored a history of abuse by officers in the Memphis Police Department[, ... and] fails to allude to any incident of brutality other than the one [the plaintiffs] allegedly suffered"). Nor has he plausibly alleged that Louisville Metro's deliberate indifference "created a training regimen so deficient that it was the actual *cause* of" Defendant Officers' unconstitutional conduct. *Harvey*, 453 F. App'x 557 at 568 (emphasis in original). Plaintiff posits that the presence of eight units on scene proves that LMPD failed to adequately train its officers: "Plaintiff offers that Defendant Louisville-Jefferson County Metro Government ordered that eight units go to the scene. This action shows excessive force and indicates the acceptance/condonation of a pattern and practice of misconduct and that Defendant Louisville-Jefferson County Metro Government had direct and actual, or at minimum constructive, knowledge of the constitutional violations that were occurring under its policy of permitting excessive force." [DE 5 at 42]. But even making all "reasonable inferences" in Plaintiff's favor, it is implausible that the presence of eight units on scene shows "acceptance/condonation of a pattern and practice of misconduct." In essence, Plaintiff asks the Court to infer that Louisville Metro was "deliberately indifferent" in training Defendant Officers because they assaulted him. *See Chacon v. Clarksville Police Dep't*, No. 3:12-cv-00884, 2012 WL 6699655, at *4 (M.D. Tenn. Dec. 21, 2012) (dismissing municipal liability claims premised on boilerplate allegations arising from one incident of alleged police

brutality). But in the context of failure-to-train claims, the Sixth Circuit has rejected this inference: "To reiterate, it is not reasonable to draw inferences—as the district court appears to have done—of inadequate training, deliberate indifference and causal effect from the mere fact that, given the training he had, Lowe still shot and killed Harvey." *Harvey*, 453 F. App'x 557 at 568.

The Court thus concludes that the Complaint lacks sufficient allegations to state a claim for municipal liability against Louisville Metro under a failure-to-train theory. The Court acknowledges that it is challenging under *Twombly* and *Iqbal* to sufficiently plead a municipal liability claim but, as one court has aptly observed, "the prevailing view within this circuit and within this district is that allegations that essentially amount to notice pleading of a municipal liability claim are insufficient." *Minick v. Metro. Gov't of Nashville*, No. 3:12-CV-0524, 2014 WL 3817116, at *2 (M.D. Tenn. Aug. 4, 2014). The Court dismisses Plaintiff's § 1983 claim against Louisville Metro.

       3.      <u>Against Defendant Officers: Generalized Pleading</u>

Defendants argue that the "Complaint is insufficient to establish §1983 liability on any individual defendant" because "[t]hroughout the complaint, Plaintiff refers to defendants collectively without ever identifying which defendant engaged in which alleged action." [DE 4-1 at 24]. Plaintiff counters: "Mr. Ransom's counsel repeatedly requested the body cameras' and the dashboard cameras' videos. Defendants refused to provide them . . . At this point in time, there is no way for Mr. Ransom to know exactly who beat him and who watched. The names of the officers were taken from the documents produced by Defendants. The officers who beat Mr. Ransom did not introduce themselves to him." [DE 5 at 37].

Based on the circumstances, including Plaintiff's due diligence before filing his Complaint and Defendant's refusal[3] to release the requested videos to him, the Court finds that Plaintiff's collective reference to "Defendants" throughout the Complaint is sufficient. *See Cason-Merenda v. Detroit Med. Ctr.*, No. 06-15601, 2008 WL 880286, at *2 (E.D. Mich. Mar. 31, 2008) ("Plaintiffs' allegations here, while not defendant-specific, are sufficiently detailed as to an alleged common course of conduct").

    4.        Against Defendants: §1985 Claim

Defendants argue that Plaintiff's §1985 claim must be dismissed: "In order to establish a §1985 conspiracy claim, Plaintiff must prove that the alleged conspiracy was 'motivated by a class-based animus.' *Johnson v. Hills and Dales General Hospital*, 40 F.3d 837, 839 6th Cir. 1994). Plaintiff has made no such allegation in his Complaint, and the facts alleged certainly do not support such a claim. Consequently, the §1985 claim must be dismissed with respect to all Defendants." [DE 4-1 at 27]. Plaintiff contends that "[i]n his Count Two, Plaintiff clearly alleges a § 1985 conspiracy: 'Defendants conspired to violate Plaintiff's Constitutional rights by setting the events into action, by depriving Plaintiff of his rights, and by many attempts to conceal their illegalities by tampering with evidence. The conspiratorial acts of the Defendants have caused the Plaintiff to suffer physical damage, emotional damages and fear.'" [DE 5 at 43].

"To state a § 1985 claim, a plaintiff must allege '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege

---

[3] Defendants concede this point: "With respect to the allegations relating to Plaintiff having been met with difficulty in obtaining records responsive to his Open Records Request, it is first noted that information was likely withheld as the Professional Standards Unit was conducting an investigation into the incident. Information is commonly withheld during the course of an ongoing investigation." [DE 4-1 at 24].

14

of a citizen of the United States.'" *Webb v. United States*, 789 F.3d 647, 671–72 (6th Cir. 2015) (quoting *Vakilian v. Shaw,* 335 F.3d 509, 518–19 (6th Cir. 2003)).  Along with the existence of a conspiracy, § 1985 claims must allege "class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). The alleged class "must be based upon race or other 'inherent personal characteristics.'" *Webb*, 789 F.3d at 672 (quoting *Browder v. Tipton,* 630 F.2d 1149, 1150 (6th Cir. 1980)).

In support of his § 1985 claim, Plaintiff alleges:

> 11.   Beginning in March of 2019 and continuing through August, Plaintiff submitted multiple Open Record Requests . . .
>
> 12.   During this time, Defendants repeatedly stalled and refused to turn over any records requested.
>
> 13.   On or about August 14, 2019, Defendants finally produced nine pieces of paper. Defendants refused to produce the dash cam or the body camera footage.
>
> . . .
>
> 15.   Such behavior is indicative of an overall scheme to cover up events of December 9, particularly the vicious attack perpetrated by Defendants against Plaintiff
>
> . . .
>
> 28.   Defendants conspired to violate Plaintiff's Constitutional rights by setting the events in action, by depriving Plaintiffs of his rights, and by many attempts to conceal their illegalities by tampering with physical evidence.
>
> 29.   The conspiratorial acts of the Defendants have caused the Plaintiff to suffer physical damage, emotional damages and fear.

[DE 1-3 at 13-15].

Plaintiff has failed to sufficiently state a § 1985 claim.  Plaintiff "does not allege membership in a protected class, or that there was any discriminatory animus on account of class

membership . . . In fact, the complaint contains no indication of any class membership at all." *See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty., Tennessee by & through Traffic & Parking Comm'n*, 805 F. App'x 379, 384 (6th Cir. 2020) (affirming district court's dismissal of § 1985 claim). Plaintiff suggests that the officers had discriminatory animus towards him because he was black and they were white: "Indeed, the nine pieces of paper finally turned over to Plaintiff's counsel and specifically referenced in the Complaint, state that Plaintiff is a black male. Based on information and belief, all of the officers on the scene were white. If necessary, Plaintiff will move the Court to amend the Complaint to allege these uncontroverted truths." [DE 5 at 44]. Plaintiff did not allege these "uncontroverted truths" in his Complaint. *Id.* But, even if he had, such allegations are insufficient to plausibly state a civil conspiracy claim of race-based discriminatory animus. *See Gibbs v. Skytta*, No. 2:18-cv-139, 2018 WL 6321559, at *9 (W.D. Mich. Dec. 4, 2018) ("The mere fact that Plaintiff and these Defendants have different racial backgrounds is not sufficient to plausibly suggest that their actions were motivated by animus toward Plaintiff's race."). As a result, the Court dismisses Plaintiff's § 1985 claim. *See Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009) (affirming district court's dismissal of § 1985 claim because "a complaint that includes conclusory allegations of discriminatory intent without additional supporting details does not sufficiently show that the pleader is entitled to relief"); *Harrison v. Woolridge*, No. 3:18-CV-00388-GNS, 2019 WL 2453665, at *6 (W.D. Ky. June 12, 2019) (dismissing § 1985 claim even though plaintiff alleged "that she was treated differently because she is African American," "that, in general, the LMPD affords less attention to the complaints of crimes by African Americans than to those of white citizens, and that "Defendants conspired to protect Woolridge, whose racial animus motivated him to withhold assistance from her during the initial welfare check"); *Anthony v. Ranger*, No. 08-CV-11436-DT,

2010 WL 1268031, at *13 (E.D. Mich. Mar. 30, 2010) (dismissing § 1985 claim where plaintiff failed to allege specific facts to support claim of racial or class-based animus).

## IV. CONCLUSION

For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

(1) Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.** [DE 4].

(2) The Clerk of Court is **DIRECTED** to terminate Louisville-Jefferson County Metropolitan Government as a defendant in the record of this matter.

(3) Within fourteen days after discovery is complete, Plaintiff shall amend his Complaint to include the identifying information for Defendant Unknown Officers and specific allegations about each Defendant Officer's liability (*i.e.*, allegations about what that officer did or did not do and how that officer's actions violate state or federal law). Plaintiff may only amend his Complaint to include this information.

Rebecca Grady Jennings, District Judge
United States District Court

October 7, 2020

Copies to: Counsel of record