UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JARRUS RANSOM                                                     Plaintiff

v.                                              Civil Action No. 3:19-cv-631-RGJ

LOUISVILLE METRO GOVERNMENT,                                    Defendants
ET AL.

* * * * *

**MEMORANDUM OPINION AND ORDER**

Defendants Cory Evans ("Evans") and Sara Nicolas ("Nicolas") (collectively, "Defendants") move for Summary Judgment [DE 51].[1] Plaintiff Jarrus Ransom ("Ransom") responded [DE 70] and Defendants replied [DE 73]. This matter is ripe. For the reasons below, Defendants' Motion for Summary Judgment [DE 51] is **GRANTED in part** and **DENIED in part**.

I.       BACKGROUND [2]

On December 9, 2018, Former LMPD Officer Evans initiated a traffic stop for excessively tinted windows on a vehicle driven by Ransom. [DE 51-2, Evans' Dash Camera Video at 0:30]. Ransom pulled into a nearby Kroger parking lot and stopped when he reached the gas pumps. [*Id.* at 0:53]. Two more LMPD police officers, Officers Kyle Carroll ("Carroll") and former Officer Nicolas, arrived on the scene shortly after Evans pulled Ransom over. [DE 51-7, Nicolas Body

---

[1] Although Counsel attached a Memorandum in support of their motion [DE 51-1], the Joint Local Rules for the Eastern and Western Districts of Kentucky contemplate a single, unified motion and memorandum. *See* Local Rule 7.1. In the future, Counsel is advised to file a unified motion.

[2] In reciting the facts, the Court relies mainly on undisputed video footage from the three police body cameras and the police car dash camera on the scene. For events not caught on film, the Court adopts Ransom's version. *Ashford v. Raby*, 951 F.3d 798, 800 (6th Cir. 2020) (observing that on a defendant's motion for summary judgment, when videotape captures the events in question the court considers the undisputed video footage and adopts the plaintiff's version of any facts not caught on film) (citing *Scott v. Harris*, 550 U.S. 372, 378–80, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).

Camera at 0:40]. Evans then asked Ransom to step out of the vehicle. Ransom initially questioned why, yet he stepped out of the vehicle after Evans stated that case law allowed him to order Ransom out. [DE 51-5, Evans Body Camera at 7:12-7:31]. Evans returned to his vehicle and called for a canine. While Evans was in his car, Ransom gave consent to search his vehicle to Carroll and Nicolas. [DE 51-6, Carroll's Body Camera Video at 3:42-3:46]. Carroll informed Evans of the consent, and they returned to the vehicle to conduct the search. [*Id*. at 3:50]. Ransom asked Nicolas if she wanted to search him, and Nicolas began searching Ransom while Carroll and Evans searched the vehicle. [DE 51-7, Nicolas Body Camera at 6:32-7:20].

While Officer Nicolas was searching Ransom, Officer Evans approached the open driver's door and reached into the vehicle. He pulled out a Pepsi can and began pouring the contents out on the ground, and two pills came out of the can. [DE 51-5, Evans Body Camera at 9:04-40]. Officer Evans crossed his wrists over each other and told Officer Nicolas to "cuff him up." [DE 51-7, Nicolas Body Camera at 7:19-7:21]. Ransom suddenly moved away from Officer Nicolas and towards his car and Officer Evans, who he made physical contact with. [DE 51-2, Evans' Dash Camera Video at 10:14-10:16]. Officer Evans grabbed Ransom and delivered two strikes to Ransom's face. [*Id*. at 10:17-10:19]. Officer Evans then delivered at least three more strikes to Ransom. [DE 51-6, Carroll's Body Camera Video at 4:47-4:49]. Officer Evans then hit Ransom on the side of his face a third time. [*Id*. at 4:52]. Two seconds later, Ransom landed face-first on the pavement. [*Id*. at 4:52-4:54]. One second after that, Officer Evans struck Ransom four times in the back, ordering him to "put your hands behind your back." [*Id*. at 4:55-4:57]. While Officer Evans, Nicolas, and Carroll are holding onto Ransom, Evans told Ransom, "Hey listen man, I'm gonna hammer-fist your face. I am going to hammer-fist your f**king face." [DE 51-5, Evans Body Camera at 9:04-40]. Ransom then stated, "my hands are right here," and Officer Carroll

handcuffed him. [DE 51-6, Carroll's Body Camera Video at 5:18-5:32]. Ransom sat on the ground handcuffed for a few minutes before attempting to get up and move towards his car and was quickly grabbed by Officers Nicolas and Evans. [DE 51-2, Evans' Dash Camera Video at 11:27-11:30]. Officer Evans and Ransom spun in a circle before Ransom was thrown to the ground, partially under Ransom's car. [*Id*. at 11:30-11:33]. While Ransom was on the ground, Officer Evans grabs Ransom's neck for approximately three seconds. [*Id*. at 11:03-11:06]. After Evans removes his hands from Ransom's neck, Evans knelt on Ransom's chest and Ransom stated, "I can't breathe." [DE 51-5, Evans Body Camera at 11:19]. Ransom was placed into the back of a police vehicle, and remained there until EMS transported Ransom to University of Louisville Hospital. [Deposition of Jarrus Ransom, DE 65 at 91]. Ransom was arrested and charged with First Degree Possession of a Controlled Substance, Tampering with Physical Evidence Resisting Arrest, Excessive Windshield Tint, and Failure to Wear a Seatbelt following the traffic stop. [Uniform Citation, DE 51-10 at 202-203]. A grand jury declined to return a true bill on all charges except for Excessive Windshield Tint, and that charge was later dismissed. [Jefferson District Court Case History, DE 51-11 at 205].

Ransom filed suit in August 2019. [DE 1-3]. Defendants removed the case to this Court, [*Id*.], and moved to dismiss. [DE 4]. The Court granted the motion in part, dismissing Ransom's §1985 conspiracy claim, his Fourteenth Amendment claim, and all claims against Louisville Metro Government [DE 7]. The parties entered into a joint stipulation dismissing all claims raised against Officer Carroll, leaving only Evans and Nicolas as Defendants. [DE 34]. Ransom's remaining claims include §1983 excessive force, assault, battery, false imprisonment, and unreasonable seizure under the Fourth Amendment, and state law claims of excessive execution, assault, battery,

and false imprisonment. Defendants now move for summary judgment on each of these remaining claims. [DE 51].

## II.     STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2507, 91 L. Ed. 2d 202 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. The movant has the initial burden to demonstrate the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514 (discussing FED. R. CIV. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States,* 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited

4

do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(B).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356, 89 L. Ed. 2d 538 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

### III.   DISCUSSION

#### A.  Qualified Immunity for § 1983 Claims

To state a claim under Section 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013). "[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation omitted). "If a police officer violates the Constitution, '42 U.S.C. § 1983 provides a civil remedy for those' injured by the violation." *Jackson v. City of Cleveland*, 925 F.3d 793, 813 (6th Cir. 2019) (quoting *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018)). "But officers sued under the aegis of § 1983 are protected from liability by the doctrine of qualified immunity." *Id*.  "Qualified immunity shields the officers from suit if (1) they did not

violate any of [plaintiff's] constitutional rights or (2) the violated rights, if any, were not clearly established when they acted." *McGrew v. Duncan*, 937 F.3d 664, 667 (6th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232, (2009) (internal quotation marks omitted). These two steps may be addressed in any order. *Pearson*, 555 U.S. at 236. But "both must be answered in the affirmative for the case to go to a factfinder to decide if each officer's conduct in the particular circumstances violated a plaintiff's clearly established constitutional rights." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). If either is not satisfied, "qualified immunity will shield the officer from civil damages." *Id.*

### 1. Constitutional Violation

#### a. Excessive Force

The Fourth Amendment protects a person's right to be free from "unreasonable seizures," including the right to be free from excessive force by police during a seizure. *Graham,* 490 U.S. at 394–95 (1989). A claim of excessive force in the context of "an arrest, investigatory stop, or other 'seizure'" is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Id.* at 388. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396. The court must pay "careful attention to the facts and circumstances of each particular case," *id.*, and "consider the difficulties of modern police work," *Smith v. Freland*, 954 F.2d 343, 346 (6th Cir. 1992), when evaluating whether a police officer acted reasonably during an arrest. To decide whether the force was excessive, courts consider: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight."

*Mitchell v. Schlabach*, 864 F.3d 416, 421 (6th Cir. 2017). Courts must look at the totality of the circumstances and judge "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

### i.   *Graham* Factor One

Although "the crimes that were initially at issue were illegal window tinting and drug possession," [DE 73 at 1276], Defendants urge the Court to consider that Ransom "quickly made the situation more severe by resisting arrest and subsequently destroying evidence by ingesting at least one pill that the officers found during the consensual search." [*Id.*]. That said, the Court must look at the nature and severity of Ransom's offenses when Officers Evans and Nicolas employed the force to subdue Ransom.[3] *See LaPlante,* 30 F.4th 572 at 580 (6th Cir. 2022) (analyzing the severity of the crime at the time the officer employed a takedown maneuver). Prior to the use of force, the two crimes at issue were excessively tinted windows and possession of narcotics. Under Kentucky law excessive window tinting is a misdemeanor, KRS § 189.110, and Officer Evans suspected Ransom of at least a Class D felony for possession of narcotics. [DE 60 at 611]. Excessive window tinting is not a violent crime. *See e.g.*, *McCollum v. Drewitz*, No. 21-CV-316-JPS, 2022 WL 4776279, at *12 (E.D. Wis. Oct. 3, 2022). Although possession of narcotics is a felony, that too is "not a violent crime." *Latits v. Phillips*, 878 F.3d 541, 549 (6th Cir. 2017). Moreover, "there is no allegation that [Ransom's] offense was violent or otherwise resulted in any injuries." *LaPlante*, 30 F.4th 572 at 580. The first *Graham* factor thus weighs in favor of finding

---

[3] It is not clear that Ransom destroyed evidence by ingesting any of the pills the officers found. Defendants concede uncertainty as to whether they believe Ransom allegedly destroyed a pill "when he charged at Evans or when he threw his body towards the pills." [DE 51-1 at 171]. The video footage does not show Ransom ingesting a pill at any point. Because the video footage does not resolve this fact, the Court must view the evidence in the light most favorable to the plaintiff, and "viewing the facts in the light most favorable to Plaintiff requires us to look at the nature and severity of Plaintiff's offense at the time" that the allegedly excessive force was used. *LaPlante v. City of Battle Creek, Michigan*, 30 F.4th 572, 580 (6th Cir. 2022)

that Officer Evan's level of force was not justified against an individual thought to have committed a non-violent felony and misdemeanor. *Shumate v. City of Adrian, Michigan*, 44 F.4th 427, 441 (6th Cir. 2022) (holding that the first *Graham* factor weighed in favor of plaintiff when the crime at issue was the non-violent felonious resisting and obstructing of a police officer).

### ii.    *Graham* Factor Two

The Court next considers whether Ransom posed an immediate threat to the safety of the officers or others. Ransom argues that he moved towards the car to revoke his consent to the search: "Mr. Ransom then took about 5 or 7 steps toward Evans to try to stop the search. Mr. Ransom was trying to shut the door." [DE 70 at 943 (citations omitted)]. Defendants argue that Officer Evans had no way of knowing Ransom's true intentions, and that Ransom "charged towards a police officer who had just found oxycodone in his vehicle and had just directed another officer to 'cuff him up.'" [DE 73 at 1277-78].

Ordinarily at the summary judgment stage the Court views the facts in the light most favorable to the plaintiff. *Scott,* 550 U.S. 372 at 378 (2007). But where the police body camera and dash-cam videos "depict [] all of the genuinely disputed facts," *Standifer v. Lacon,* 587 Fed.Appx. 919, 920 (6th Cir.2014) the Court "view[s] the facts in the light depicted by the videotape[s]." *Scott,* 550 U.S. at 381, 127 S.Ct. 1769. While Ransom is technically correct that he approached Officer Evans by stepping towards him, in that one must take steps to move towards another person, the video evidence does not support Ransom's account of the facts at this point. Evans' dash camera shows Ransom suddenly moving away from Officer Nicolas and towards his car and Officer Evans, who he makes physical contact with. [DE 51-2, Evans' Dash Camera Video at 10:14-10:16]. A suspect poses an immediate threat in the form of "violent [] thrashing," an "attempt [] to hit officers [,] or [by] mak[ing] a display of force." *Kent v. Oakland Cnty.*, 810 F.3d

384, 391 (6th Cir. 2016); *see also Rudlaff v. Gillispie*, 791 F.3d 638, 640 (finding tasing reasonable where claimant "puffed out his chest and stared down [the officer]," then swung his arms twice at the officer). Regardless of Ransom's subjective intention, the objective video evidence shows Ransom charging towards Officer Evans and contacting his body; behavior that could be considered an "attempt [] to hit officers [,] or [by] mak[ing] a display of force," and that would make a reasonable officer fear for his physical safety. *Kent*, 810 F.3d 384 at 391. Because Ransom's actions would make a reasonable officer fear for his physical safety, the second *Graham* factor supports finding that Officer Evan's level of force was justified.

### iii.    *Graham* Factor Three

The third *Graham* factor is whether Ransom "actively resisted" in a manner that warranted the use of force. "When, 'as here, a plaintiff claims that excessive force was used multiple times, the court must segment the incident into its constituent parts and consider the officer's entitlement to qualified immunity at each step along the way.'" *Hammond v. Cty. of Oakland, Michigan*, 825 F. App'x 344, 346 (6th Cir. 2020) (quoting *Wright v. City of Euclid*, 962 F.3d 852, 865 (6th Cir. 2020)). The alleged excessive force, and therefore Ransom's alleged resistance, occurred in four discrete stages. The first was when Ransom made physical contact with Officer Evans. Ransom argues that "[he] was not told he was under arrest before he was beaten, therefore he was not resisting arrest." [DE 70 at 949]. It is true that the Sixth Circuit has held that "[t]he general consensus among our cases is that officers cannot use force . . . on a detainee who has been subdued, is not told he is under arrest, or is not resisting arrest." *Goodwin v. City of Painesville*, 781 F.3d 314, 326 (6th Cir. 2015) (citing *Grawey v. Drury*, 567 F.3d 302, 314 (6th Cir.2009). Even so, a suspect need not be told that he is under arrest to know that he is, so long as under the circumstances "a reasonable person would have realized he was under arrest," *Brown v. Scaglione*,

No. 20-10192, 2022 WL 3051550, at *6 (E.D. Mich. Aug. 1, 2022). Evans' body camera footage shows that after he finds the pills in Ransom's Pepsi can, he crosses his wrists over each other and tells Officer Nicolas to "cuff [Ransom] up". [DE 51-5, Evans Body Camera at 9:44-46]. Officer Nicolas is standing in the same spot as Ransom and Officer Evans can be clearly heard telling her this. [DE 51-7, Nicolas Body Camera at 7:19-7:21]. While Officer Evans did not state the words 'you are under arrest,' his statement to Officers Nicolas to "cuff him up" makes it "objectively apparent that the Officers intended to take [Ransom] into custody." *Goodwin,* 781 F.3d at 326. Once Ransom was on notice that he would be arrested, he moved quickly towards Officer Evans and made physical contact with his body. [De 51-2, Evans' Dash Camera Video at 10:14-10:16]. The Sixth Circuit has specifically noted that a "deliberate act of defiance using one's own body" crosses the line to active resistance to arrest. *Eldridge v. City of Warren,* 533 F. App'x 529, 535 (6th Cir. 2013). In response to Ransom's contact with his body, Officer Evans delivered two strikes to Ransom's face. [DE 51-2, Evans' Dash Cam Video at 10:17-10:19]. The Sixth Circuit has held that an arrestee's active resistance to arrest may justify significant physical force in response. *Gambrel v. Knox Cnty., Kentucky,* 25 F.4th 391, 402 (6th Cir. 2022) (noting that takedown maneuvers, knee strikes, and taser use have been upheld as reasonable force in response to active resistance to arrest). "At a minimum, a reasonable officer could believe that this initial use of force was reasonable," and Officer Evans is therefore entitled to qualified immunity at this first stage of the encounter. *Id. (*citing *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5, 142 S. Ct. 4, 7, 211 L. Ed. 2d 164 (2021)).

The second stage of force occurred when Ransom lay uncuffed on the ground and Officer Evans struck Ransom on the back. Defendants argue that Officer Evans only used the force necessary to subdue Ransom and make him give up his hands so that he could be handcuffed. [DE

73 at 1272]. Defendants point to *VanPelt v. City of Detroit, Michigan*, asserting that it is factually similar and controls the outcome of this case. 70 F.4th 338, 340-41 (6th Cir. 2023). In *VanPelt*, the officer had allegedly used excessive force both by tackling the plaintiff and then by trying to lift him off the ground. Once VanPelt told the officer he was injured, "the very next second, Officer Layne released his grip . . . the record and video do not establish any indication of excessive force after the tackling, only an effort to get VanPelt to his feet and then lowering him to the ground when VanPelt complained that he could not stand." *Id.* The video footage confirmed that VanPelt had actively resisted arrest by fleeing from the officer, and the court held that when a suspect flees, police may use force to subdue him, citing *Rudlaff*, 791 F.3d at 641-42. In *Rudlaff*, the plaintiff admitted to being orally defiant, he twice swung his arms in one officer's direction, and he conceded that he had refused to give the officers his hands to avoid being handcuffed. *Id.* at 642. The court in *Rudlaff* concluded that active resistance "includes refusing to move your hands for the police to handcuff you, at least if that refusal to move hands is coupled with other acts of defiance." *Id*, at 641-42. When a suspect actively resists arrest, "the police can use a taser (or a knee strike) to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot." *Id.* (internal quotation marks and citations omitted).

Although Defendants contend that Ransom, like the defendant in *Rudlaff*, "concedes that he continued to resist after he was taken to the ground," [DE 73 at 1278], it is important to begin by noting that Ransom does not concede that he continued to resist arrest. Instead, Ransom concedes that he continued to move while the officers were attempting to get his hands, [DE 70 at 943] and Defendants argue that Ransom was therefore resisting because "[a]ctive resistance is defined by both LMPD standard operating procedures and case law as physically struggling and refusing to provide hands to allow officers to handcuff." [DE 73 at 1278]. What Ransom does

11

concede is a critical distinction because the relevant case law does not define active resistance quite so narrowly. The Sixth Circuit has distinguished between 'active resistance' and 'passive resistance, 'and a suspect's failure to produce his hands for handcuffing does not always qualify as active resistance. In *Marvin v. City of Taylor*, an elderly plaintiff told the officer that he could not place his arms behind his back to be handcuffed because it was too painful to do so. 509 F.3d 234 (6th Cir. 2007). The court held that even though Marvin was resisting arrest, "in considering the full context of the situation . . .  Marvin's method of resisting could be characterized as passive such that the resistance was not so great as to require [the officer's] allegedly rough treatment." *Id.* at 236. Similarly, in *Stanfield v. City of Lima*, the court held that the plaintiff was not actively resisting by not producing his hands for handcuffing because the officers prevented him from doing so by kneeing him repeatedly and kneeling or laying on him. 727 F. App'x 841, 847–48 (6th Cir. 2018).

As in *VanPelt*, this case presents a circumstance where police officers confronted a driver for driving a car with an illegal window tint and suspected drug possession. That is where the similarities between the two cases end. While it is true that the Sixth Circuit noted that it had "repeatedly upheld even more severe uses of force in similar contexts," it did so in cases "where the person *is actively resisting arrest*." *VanPelt*, 70 F.4th at 340. (emphasis added). In both *VanPelt* and *Rudlaff*, the officers faced active resistance to arrest, and they then used force to gain compliance; the officers did not use force once the resistance stopped. Unlike in *VanPelt*, where "the record and video do not establish any indication of excessive force after [the initial justified use of force]," after the initial two strikes to Ransom's face, Carroll's Body Camera Video shows Officer Evans hit Ransom in the face a third time. [DE 51-6, Carroll's Body Camera Video at 4:52]. Two seconds later, Ransom lands face-first on the pavement. [*Id*. at 4:52-4:54]. One second

after that, Officer Evans strikes Ransom four times in the back. [*Id*. at 4:55-4:57]. At his deposition, Officer Evans testified to the following about his use of force:

> Q. The first two times when you hit him in the face, why did you hit him two times?
> A. That's all that was required to get him to the ground.
> Q. Okay. Well, did you like hit him and then wait to see if he was going to go to the ground?
> A. No. We just went to the ground, and I didn't -- it wasn't required anymore at that point.
> And then once his hands were underneath of him and he wasn't giving his hands up, that's when the strikes to the kidneys were used and that got his hands.

[DE 60 at 216].

Evans testified that he struck Ransom in the back because he was continuing to resist and not providing his hands for handcuffing, [*Id*.], while Ransom contends that he was moving to try to relieve the pain of the officer's body weight on his back. [DE 51-5, Evans' Body Camera Video at 10:10]; [DE 70 at 943]. The video evidence does not clearly resolve this dispute over whether Ransom actively resisted by refusing to provide his hands for handcuffing. The video evidence suggests Ransom did not have time to resist before he was hit on the back. Officer Carroll's body camera footage shows that Evans waited only one second between the point he indicated in his deposition that force was no longer required and when he decided strikes to Ransom's kidneys were necessary to get his hands. [DE 51-6, Carroll's Body Camera Video at 4:55-4:56]. Accepting Ransom's factual assertions, Ransom was attempting to alleviate pain from the officers' kneeling on him. It would not have been reasonable for an officer to have perceived the struggle as "active resistance," even if the Court assumes that the one second of Ransom's movement qualified as engaging in the kind of passive resistance that "was not so great" to require the officer's rough treatment in *Marvin*. Viewing the evidence in the light most favorable to Ransom and drawing all

reasonable inferences in his favor, there is therefore a genuine dispute of fact about whether Ransom resisted arrest by taking actions that prevented the three officers from handcuffing him.

Ransom also claims that Officer Nicolas hit him "while he was down" on the ground. [DE 70 at 943]. Defendants contest that "none of the camera angles show this," [DE 73 at 1273], and argue that Nicolas explained in her deposition "she had unintentionally struck Ransom's shoulder when trying to get his hands." [*Id.*]. Officer Nicolas testified in her deposition, "I was trying to grab his arm," when asked why she hit Ransom's shoulder. [DE 58 at 439]. Yet Nicolas did not state that she did not hit Ransom "while he was down." When asked if she hit Ransom any other times "before, after, or during while Officer Evans was hitting him," Nicolas stated that she could not remember. [*Id.*]. Shortly after the altercation with Ransom, Officer Nicolas can be heard telling another officer "I did one strike" to Ransom during the scuffle. [DE 51-7, Nicolas Body Camera at 22:02]. And in any case, as Defendants rightly observe, "none of the camera angles show" whether Officer Nicolas struck Ransom. In such a situation, the Court must credit the facts in the light most favorable to the plaintiff. *Sagan*, 342 F.3d at 497. As a result, there is a genuine dispute of fact as to whether Officer Nicolas struck Ransom while he was on the ground.

The final stage of Ransom's resistance occurred when he attempted to get up and move away from the officers while was handcuffed on the ground. The parties differ significantly in describing this interaction. Ransom alleges the body cameras show that "Evans put Mr. Ransom in a chokehold." [DE 70 at 943]. Defendants maintain that "Evans' hands landed on Ransom's neck (unintentionally), and he removed them immediately. There was no 'chokehold.'" [DE 73 at 1272-73 (citation omitted)]. Referring to Evans' actions as having immediately removed his hands after they "unintentionally landed" on Ransom's neck is an argument contradicted by the body camera footage. [DE 51-5, Evans' Body Camera Video at 11:03-11:06]. The video footage shows

14

a handcuffed Ransom briefly rise off the ground and move towards his car again before he is quickly caught by Officers Nicolas and Evans. [DE 51-2, Evans' Dash Camera Video at 11:27-11:30]. Officer Evans and Ransom spin in a circle before Ransom is thrown to the ground, partially under Ransom's car. [*Id*. at 11:30-11:33]. Officer Evans can be seen with his thumbs laced over each other and his hands wrapped around Ransom's neck. [DE 51-5, Evans Body Camera at 11:04]. Officer Evan's hands are around Ransom's neck for approximately three seconds. [*Id*. at 11:03-11:06]. After Evans removes his hands from Ransom's neck, Evans kneels on Ransom's chest and Ransom can be heard stating, "I can't breathe." [*Id*. at 11:19].

The body camera footage appears to show, as Officer Evans described in his deposition, that after Ransom landed on the ground "my hands slid[] around his throat, which would have been excessive [,] so I reposted up and grabbed his shirt collar." [DE 60 at 637]. While this use of force was perhaps not as severe as other instances of excessive force by choking, the Sixth Circuit has rejected a blanket *de minimis* injury requirement for excessive force claims. *Morrison v. Bd. Of Trustees of Green Twp.*, 583 F.3d 394, 406 (6th Cir. 2009). The court in *Morrison* reasoned that "while an excessive use of force claim may be established through evidence of severe injury or physical contact, this Circuit has not required that this must be the case." *Id.* at 401; *See also Dixon v. Roscommon Cnty.*, 896 F. Supp. 2d 670, 678 (E.D. Mich. 2012) (holding that whether six seconds of choking a suspect was sufficient for an excessive force – failure to intervene claim was a factual question for a jury). Moreover, the mere fact that Ransom tried to escape from Officer Evans' and Nicolas' control before Officer Evans grabbed his neck does not justify that conduct as a matter of law. *See Baker v. City of Hamilton,* 471 F.3d 601, 607–08 (6th Cir.2006) (finding a suspect's attempt to evade arrest by running two blocks from an officer did not preclude his claim of excessive force or justify the officer's subsequent baton strikes).

15

The objective facts, viewed in the light portrayed by the video—and for those facts not portrayed by the video, when viewed in the light most favorable to Ransom—show that a reasonable jury could find that the severity of the offense at issue was low; after the initial subduing, Ransom posed little immediate threat to officer safety; and Ransom offered little more than passive noncompliance while he was on the ground.  A reasonable jury could find that the officer's use of force was not objectively reasonable considering the totality of these circumstances. Accordingly, the Court finds that the question of whether Defendants used excessive force presents an issue of fact for a jury to determine.

### b.  Clearly Established Right

Even when a reasonable jury could find that officers violated a constitutional right, the Court must consider whether that right was clearly established when the arrest occurred, as "if the law at that time was not clearly established, an official could not . . . fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). The right's contours must be "sufficiently clear" to show that "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The Sixth Circuit has observed that the Court must "zoom in close enough to ensure the right is appropriately defined: instead of stating it 'at a high level of generality,' we 'go down the stairs of abstraction to a concrete, particularized description of the right.'" *Hagans v. Franklin Cnty. Sheriff's Off.,* 695 F.3d 505, 508 (6th Cir.2012) (internal quotation marks omitted). But not too close:

> [J]ust as a court can generalize too much, it can generalize too little. If it defeats the qualified-immunity analysis to define the right too broadly (as the right to be free of excessive force), it defeats the purpose of § 1983 to define the right too

narrowly (as the right to be free of needless assaults by left-handed police officers during Tuesday siestas).

*Id*. at 508–09.

The Court's role, then, is not to match the exact set of circumstances presented here with a perfectly analogous case, as "the mere fact that a court has not held the particular action in question unlawful is insufficient to create immunity." *Griffith*, 473 F.3d at 659 (citing *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034). An action's unlawfulness may be plain "from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Champion v. Outlook Nashville, Inc*., 380 F.3d 893, 902 (6th Cir.2004) (internal quotation marks omitted). While the contours of a right must be "sufficiently clear," *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034, a "fundamentally similar" or "materially similar" case is not required to show it is clearly established, *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

Defendants argue that "[n]o legal principle 'clearly prohibit[ed] the officer's conduct in the particular circumstances before Evans and Nicolas.'" [DE 51-1 at 167]. Defendants further assert that "very recent Sixth Circuit case law affirms that the officers' response was both reasonable and in line with constitutional precedent." [*Id*.]. As noted earlier, *VanPelt* is distinguishable on the facts and does not control the outcome. Moreover, although the Sixth Circuit has yet to issue the specific instruction that an officer may not hammer-fist a suspect's kidney four times after the officer found two unknown pills in the suspect's Pepsi can during a stop for excessively tinted windows, it need not do so. In *Lustig v. Mondeau*, 211 F. App'x 364, 371 (6th Cir. 2006) the Sixth Circuit, reversing a grant of qualified immunity in an excessive force case, held that "it is sufficiently obvious under *Graham* that it would be objectively unreasonable for an officer to gratuitously cause additional pain to a nonviolent and, at most, passively resistant detainee while [he] is being restrained in a full control hold by two officers." *Id.* at 7. Because a reasonable officer

17

would have known that the conduct alleged here was unlawful, qualified immunity is unavailable. *See Smith v. Cupp,* 430 F.3d 766, 777 (6th Cir.2005) ("where a general constitutional rule applies with 'obvious clarity' to a particular case, factually similar decisional law is not required to defeat a claim of qualified immunity"). Defendant's Motion as to the claim of Qualified Immunity is **DENIED**.

### 2.  Constitutional Violation - False Imprisonment

Ransom states that he "withdraws a constitutional claim of false imprisonment, if such was made," [DE 70 at 955], so Defendant's motion for summary judgment on this claim will be **GRANTED**.[4] *See Morrison v. Trulock*, No. 1:19-CV-00004-GNS, 2020 WL 2090525, at *6 (W.D. Ky. Apr. 30, 2020) (citing *Sykes v. Dudas*, 573 F. Supp. 2d 191, 202 (D.D.C. 2008) ("[W]hen a party responds to some but not all arguments raised on a Motion for Summary Judgment, a court may fairly view the unacknowledged arguments as conceded.")).

### B.  Qualified Immunity for State Law Claims

Like qualified immunity in the federal context, qualified official immunity under Kentucky law offers immunity from tort liability to public officers for acts performed in the exercise of their discretionary functions. *Yanero v. Davis*, 65 S.W.3d 510, 521-22 (Ky. 2001). As explained in *Yanero*, "[q]ualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Id.* at 522 (citations omitted). Under Kentucky law, a peace officer is not allowed to use unnecessary force or violence in making an arrest, but may "use such force as is necessary, or reasonably appears so, to take a suspect into custody." KRS § 431.025(3);

---

[4] Ransom also withdraws his state law claim for false imprisonment, [DE 70 at 956], so the Court will **GRANT** Defendant's motion for summary judgment on that claim as well.

*Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky. Ct. App. 2007) (citing *City of Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky. 1973)). "[T]he determination of the amount of force required to effect the investigatory stop or arrest is . . . a discretionary act within the scope of a peace officer's authority." *Smith v. Norton Hosps., Inc.*, 488 S.W.3d 23, 31 (Ky. App. 2016) (citing *Nichols v. Bourbon Cty. Sheriff's Dept.*, 26 F. Supp. 3d 634, 642 (E.D. Ky. 2014); KRS § 503.090). "Once the officer ... has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Yanero*, 65 S.W.3d at 523 (citing *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991)).

As for the first prong, "the determination of the amount of force required to effect the investigatory stop or arrest is . . . a discretionary act." *Smith v. Norton Hosps., Inc.*, 488 S.W.3d 23, 31 (Ky. Ct. App. 2016). Evan's and Nicolas's decisions to use force on Ransom were therefore discretionary acts. The third prong is also not in dispute. It is the second prong of the immunity analysis that denies immunity in this case. The Supreme Court of Kentucky explained in *Yanero* that "in the context of qualified official immunity, 'bad faith' can be predicated on a violation of a constitutional, statutory or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.* objective unreasonableness." 65 S.W.3d at 523. As stated above, a reasonable jury could find that the officers violated Ransom's clearly established constitutional rights because their actions constituted excessive force and were objectively unreasonable. Consequently, Evans and Nicolas have failed to satisfy the good-faith prong and are not entitled to qualified official immunity under state law. Defendant's Motion as to Qualified Immunity for the state law claims is **DENIED**.

### C.  State Law Claims for Assault and Battery

Defendants assert that even if qualified immunity does not shield them, they are entitled to summary judgment because: (1) their conduct did not rise to the level of a battery under the law and (2) they cannot be held liable because they are entitled to an affirmative defense under KRS § 503.085(1). The analysis of the qualified official immunity claim necessarily determines these claims.[5] Under Kentucky law, common-law battery is defined as "any unlawful touching of the person of another, either by the aggressor himself, or by any substance set in motion by him." *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000) (citation omitted). An officer may use the amount of force that the officer reasonably believes is necessary to effectuate an arrest, but no more. *City of Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky. 1972). The determination that a reasonable jury could find that Defendants used excessive force resolves this merit argument because "[t]he use of excessive force by a police officer constitutes the intentional tort of battery." *See Ali v. City of Louisville*, No. 3:03CV-427-R, 2006 WL 2663018, at *8 (W.D. Ky. Sept. 15, 2006).

The excessive-force determination similarly determines the self-defense challenge. Although KRS § 503.085(1) provides for both civil and criminal immunity when an individual acts in self-defense, as Defendants point out, the Kentucky Supreme Court held in *Rodgers v. Commonwealth*, 285 S.W.3d 740 (Ky. 2009), that "the court must dismiss the case *unless* there is probable cause to conclude that the force used was not legally justified." *Id*. at 754 (emphasis

---

[5] Ransom also alleged a claim for excessive execution in the same paragraph as his claims for assault and battery. [DE 1-3 at 15, ¶31] ("The aforementioned conduct of the Defendants toward the Plaintiff constitutes the torts of excessive execution, assault, battery . . ."). Ransom argues that paragraph was intended to be interpreted as an excessive force claim for assault and battery. [DE 70 at 956] ("Defendants argue that Plaintiff made a claim for excessive execution in paragraph 31 of his Complaint. That paragraph asserts a claim for assault. Plaintiff also makes a claim for the use of excessive force – battery."). To the extent that Ransom has abandoned any claim for excessive execution, the Court will grant Defendant's motion for summary judgment on that claim.

added); *see also Brown v. Fournier*, No. 2015-CA-001429-MR, 2017 WL 2391709, at *6 (Ky. Ct. App. June 2, 2017) ("although an officer may be justified in using force against a person, any defense of justification or privilege is lost if the force used is excessive."). As outlined above, because a jury could find that Evans and Nicolas used more force than was reasonably necessary under the circumstances, they are not entitled to summary judgment on this defense. Defendant's Motion as to these claims is **DENIED.**

### IV.     Conclusion

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Defendants' Motion for Summary Judgment [DE 51] is **GRANTED in part and DENIED in part**;

(2) The Court **GRANTS** summary judgment to the Defendant on the following claims: the § 1983 false imprisonment claim in Count I; the state law claim for false imprisonment in Count III, and the state law claim for excessive execution in Count III.

(3) The claims remaining against Evans and Nicolas are a § 1983 excessive force claim, unreasonable seizure under the Fourth Amendment, and state law claims of assault and battery.

Rebecca Grady Jennings, District Judge
United States District Court

October 13, 2023

cc:     Counsel of record